## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GAIL M. N.,**[1] | Case No. 3:20-cv-00827-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security,[2] | |
| Defendant. | |

Kevin Kerr, Kerr Robichaux & Carroll, P.O. Box 14490, Portland, OR 97293. Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Erin F. Highland, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant. *See* Fed. R. Civ. P. 25(d).

PAGE 1 – OPINION AND ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of the Social Security Administration's ("Commissioner") final decision denying in part her application for Title XVI Supplemental Security Income ("SSI"). For the reasons stated below, because this Court finds that the Administrative Law Judge ("ALJ") committed no harmful error, the ALJ's decision affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted) (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born in 1962. AR 107, 204. She has past relevant work as a veterinary

pathologist, medical laboratory technician, AR 77, 103, and bartender or server, AR 103, and has

a college education, AR 238. Plaintiff filed an application for SSI on June 2, 2016, alleging

disability since March 1, 2009; Plaintiff amended the alleged onset date to June 2, 2016. AR 43,

208. She was 53 years old on her alleged onset date.

Plaintiff's application was denied initially and upon reconsideration. AR 134–38, 142–

43. Plaintiff requested a hearing. AR 145–46. Plaintiff appeared with counsel at an

administrative hearing on September 26, 2018, before ALJ Richard Geib. AR 39–41.

On December 3, 2018, the ALJ issued a decision finding Plaintiff not disabled prior to

August 30, 2017. AR 12, 31–32. Plaintiff requested review of the ALJ decision by the Appeals

Council. On March 18, 2020, the Appeals Council denied the request for review, making the

ALJ's September 26, 2018 decision the Commissioner's final administrative decision in this

case. AR 1–3. Plaintiff now seeks review of the ALJ's decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (disability insurance benefits), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The

five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

> 5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id.; see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Plaintiff did not engage in substantial gainful activity since the date of her application, June 2, 2016. AR 19. The ALJ found at step two that Plaintiff has "the following severe impairments: affective disorder, anxiety disorder, personality disorder, GERD, status post tumor in neck with dysphagia, bilateral sensorineural hearing loss with no functional hearing in left ear, and status post fracture of fourth finger of the left hand." *Id.* The ALJ concluded at step three that although these impairments constituted severe impairments under 20 C.F.R. § 416.920(c), the impairments did not meet or

medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

The ALJ found at step four that since June 2, 2016, Plaintiff has the residual function capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except she: can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; would need to work in a moderate or quieter noise environment that support the ability to communicate in close contact between the worker and people that she communicates with; would need to avoid even moderate exposure to work hazards such as hazardous machinery and unprotected heights; can perform simple, routine tasks; and can have occasional contact with coworkers and the general public. AR 23.

The ALJ found at step five that prior to August 30, 2017,[3] Plaintiff was capable of performing relevant work as: (1) assembler small products, DOT 739.687-030; (2) electronics worker, DOT 726.687-010; and (3) mail clerk, DOT 209.687.026. AR 30–31. The ALJ found that prior to August 30, 2017, Plaintiff was not disabled, but that beginning on August 30, 2017, the date on which Plaintiff's age category changed, Plaintiff is disabled. AR 31.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly evaluating Plaintiff's subjective testimony; (2) improperly evaluating the lay witness testimony of Shirley N.; (3) improperly rejecting medical opinions; (4) failing to find Plaintiff's impairments severe at step two; (5) failing to find Plaintiff's impairments meet or equal a listing at step three; and (6) inadequately conducting the step five analysis. ECF 10 at 6. Each argument is addressed in turn.

---

[3] On August 30, 2017, Plaintiff's age category changed to an individual of advanced age. AR 29; *see* 20 C.F.R. § 416.963.

A.  **The ALJ Did Not Commit Harmful Error in Evaluating Plaintiff's Subjective Testimony**

  1.  **Legal Standards**

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's

symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

Plaintiff contends that the ALJ "discounted [her] testimony after engaging in a recitation of the medical evidence, with no specificity as to what testimony was discredited and why." ECF 10 at 19. Specifically, the ALJ is alleged to have erred by: (1) "improperly reject[ing] [Plaintiff's] mental health complaints"; (2) "finding her modest daily activities inconsistent with her allegations"; (3) "ignor[ing] the fact that [Plaintiff] would not be provided accommodations" necessary for her hearing limitations; (4) "overlook[ing] several of [Plaintiff's] severe impairments and limitations"; and (5) "inexplicably reject[ing] her manipulative limitations." *Id.*

### a.  Mental Health

Plaintiff reported mental health issues in her function report. She noted she has "depression, anxiety, [and] personality disorder." AR 279. She attributed having "a hard time sleeping" to her "anxiety and other issues," AR 281, as well as noted that sometimes she does not feel like going outside, which "may be anxiety/depression," AR 283. She also stated that she does not handle stress very well, resulting in "high blood pressure," and does not handle changes in routine "too well." AR 286. At her hearing, Plaintiff testified that she has depression, "probably [has] some other mental issues that [she is] just not aware of," and indicated that she suffers from anxiety as well. AR 51.

The ALJ noted Plaintiff's complaints regarding "ongoing depression and anxiety issues," but found that "objective evidence found in the medical file as well as [Plaintiff's] own statements do not support the alleged severity of her limitations." AR 23; *see also* AR 25 ("With regard to [Plaintiff's] affective disorder, anxiety disorder, and personality disorder, . . . examination and treatment notes from her providers, in addition to her own statements related to

her activities of daily living, consistently show that her cognitive and social limitations are minimal [and] intermittent.") The ALJ offered specific, clear and convincing reasons for discounting Plaintiff's mental health testimony regarding her depression, anxiety, affective disorder, and personality disorder, which permit this Court to "conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750 (citing *Bunnell*, 947 F.2d at 345–46). Accordingly, the ALJ committed no harmful error.

The ALJ identified objective medical evidence and Plaintiff's own statements that contradict and undermine Plaintiff's testimony, and thus provided specific and legitimate reasons to discount her testimony. *See Batson*, 359 F.3d at 1196. The ALJ refers to medical records that assessed Plaintiff as mentally stable and without psychological impairments. AR 25; *see* AR 535 (assessing Plaintiff, in June 2016, as having a "normal mood and affect" during an emergency room visit for a finger injury); AR 677–82 (assessing Plaintiff, in November 2016, as "emotionally stable" and assessing no psychological impairments); AR 688 (assessing Plaintiff, in February 2017 during emergency room visit for a fall, as having a "[n]ormal affect" with "[l]ogical/linear thought processes"); AR 718–19 (assessing Plaintiff, in February 2017 emergency room visit for assault, as having "[n]o anxiety," "appropriate mood [and] affect," and as "[c]ooperative"). The evidence discussed by the ALJ does not demonstrate waxing and waning symptoms, but rather consistent and stable mental health.

The ALJ also explains that Plaintiff's own testimony contradicts her statements regarding the severity of her mental health symptoms. AR 25; *see Smolen*, 80 F.3d at 1284 (explaining that an ALJ may consider prior inconsistent statements when assessing credibility). At her hearing, Plaintiff testified that while she is "more upset" on some days than others, she "seem[s] to be doing pretty well." AR 51. And, when asked if she "ever had difficulty getting along with

coworkers," Plaintiff stated that "[g]enerally, [she has] gotten along well with people, easy to

work with," and that she enjoyed interacting with others in a prior job. AR 56; *see also* AR 314

(reporting, by Plaintiff's mother, that Plaintiff gets along "very well" with authority figures).[4]

### b. Hearing

Regarding Plaintiff's hearing limitations, she reported that she has "bilateral sensorial

hearing loss," AR 279, and has problems hearing, in particular on the phone, AR 281, 284. She

similarly explained at her hearing that she is "completely deaf" in her left ear and "a little over

half" deaf in her right ear.[5] AR 41.

The ALJ found that "examination notes and audiological testing, in addition to

[Plaintiff's] testimony regarding her daily activities, show that [her hearing] limitations are not in

excess of those already included in the residual functional capacity." AR 25. The ALJ credited

---

[4] The ALJ also relied on Plaintiff's and her mother's function reports, which report that
Plaintiff is able to do certain daily living activities. AR 25. Plaintiff contends that the ALJ erred
by finding Plaintiff's daily living activities inconsistent with her testimony. ECF 10 at 19.
"Engaging in daily activities that are incompatible with the severity of symptoms alleged can
support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir.
2014). As described in the function reports, however, Plaintiff's daily activities are not
incompatible with the alleged severity of her mental health symptoms. That Plaintiff can do such
basic activities as "bathe, dress, and feed herself, use the toilet, do laundry, . . . use public
transportation, shop in stores, . . . [and] socialize with others in person," does not contradict
Plaintiff's testimony that she suffers from depression and anxiety. Plaintiff did not report that she
*never* goes outside and reported that she is able to do basic chores and socialize. *See* AR 282–85.
Additionally, while daily activities may be "grounds for an adverse credibility finding 'if a
claimant is able to spend a substantial part of his day engaged in pursuits involving the
performance of physical functions that are transferable to a work setting,'" the ALJ failed to
make "specific findings" to warrant that conclusion. *Orn,* 495 F.3d at 639 (quoting *Fair v.
Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). Any error the ALJ committed in this context is
harmless and does not negate the ALJ's ultimate conclusion that Plaintiff's testimony regarding
her mental health symptoms was not entirely credible. The ALJ's reliance on the objective
medical evidence as well as Plaintiff's own testimony at her hearing provide substantial evidence
for his determination.

[5] The ALJ noted that at the hearing, Plaintiff was not wearing her hearing aid as it was
being repaired. AR 41.

Plaintiff's hearing limitation testimony by including limitations in the RFC, *see* AR 26; AR 23 (providing that Plaintiff "would need to work in a moderate or quieter noise environment that supports that ability to communicate in close contact between the worker and people that she communicates with"), and to the extent he gave less weight to certain hearing limitations, the ALJ cited to objective medical records and Plaintiff's own testimony. Accordingly, the ALJ did not err or arbitrarily discredit Plaintiff's symptom testimony. *Orteza*, 50 F.3d at 750.

The ALJ discussed medical records which indicated that while Plaintiff has severe hearing loss, with a hearing aid she is able to adequately function. For instance, the ALJ explained that Dr. Andrew Pedersen, M.D., and Jennifer Young, AuD, "found that despite moderate to severe hearing loss in her right ear and profound hearing loss in her left ear, [she] is able to take care of her daily activities, is able to hear with her hearing aid, and . . . is understandable and able to communicate effectively. AR 25 (citing AR 685–86, 746). Dr. Pedersen assessed that she "does adequate" with a hearing aid, and audiologist Young noted that when her hearing was tested "unaided," "[w]ord recognition is fair in right ear." AR 685–86; *see also* AR 25–26. In November 2016, Dr. Nguyen noted that Plaintiff "has a difficult time hearing conversational voices," and that he "had to speak louder and repeat [him]self," but also that Plaintiff was not wearing her hearing aid when she was examined. AR 677. He also noted that her speech was "audible, understandable, and sustainable." AR 679; *see also* AR 1221 (noting by emergency room physician that Plaintiff's speech was "clear"). The ALJ further assessed Plaintiff's hearing loss as "stable," based on results from an audiologic examination in March 2018, which were consistent with the results of her January 2017 examination. AR 26; *compare* AR 686, 740 (January 2017 exam), *with* AR 734 (March 2018 exam).

Moreover, Plaintiff's own testimony supports a finding that Plaintiff can function in a work environment despite her hearing limitations. *See Smolen*, 80 F.3d at 1284. The ALJ explained that at her hearing, Plaintiff, who was not wearing a hearing aid, had a difficult time hearing the ALJ, but was able to hear her attorney, who was sitting close to her. AR 26; *see also* AR 41. Plaintiff also testified that she successfully worked in a "loud" environment as a bartender and server, that she "dealt with people one on one" and that she made sure she could hear orders. AR 57.[6] The ALJ reasonably assessed Plaintiff's subjective testimony regarding her hearing, based on substantial evidence from Plaintiff's other statements and objective medical evidence, and accordingly committed no harmful error. There is no evidence, nor does Plaintiff provide any argument in support of her claim, that the ALJ ignored the fact that she "would not be provided accommodations in the competitive workplace to constantly be in extremely close proximity" to other. *See* ECF 10 at 19. In fact, the ALJ specifically considered these sorts of environmental limitations in crafting the RFC. AR 26.

### c.   Manipulative Limitations

As to Plaintiff's manipulative limitations related to her "status post fracture" of her left hand fourth finger, the ALJ reasonably concluded that while the record, including Plaintiff's subjective symptom testimony, showed some restrictions, those "limitations are not in excess of those included in the residual functional capacity." AR 27. Plaintiff contends, in her briefing, that the ALJ "inexplicably rejects her manipulative limitations despite referencing Dr. Nguyen's examination findings." ECF 10 at 19. This Court finds no error in the ALJ's analysis.

---

[6] As above, this Court notes that the reported activities of daily living do not undermine Plaintiff's claimed symptoms as to her hearing, nor did the ALJ make a specific finding that these activities were transferrable to the work environment. However, because the ALJ provided other legitimate reasons for his assessment of her subjective testimony, any error here is harmless.

During her hearing, Plaintiff explained that her left ring finger is broken, and it bothers her when she has to pick things up and causes her to be unable to pick up heavy things. AR 46. The ALJ reviewed the record, including the objective medical evidence, and determined that while Plaintiff could still work, the relevant RFC required certain exertional limitations to account for the finger injury. AR 27; *see* AR 535 (finding, in June 2016, that despite finger laceration, there was no "rotational deformity" or fracture, and her range of motion was intact); AR 681–82 (assessing that Plaintiff can "grip and hold objects securely to the palm by the last three digits" and "grasp and manipulate both large and small objects with the first three digits," with "4/5" grip strength bilaterally, though she is limited in her ability to "do any heavy chores or heavy lifting"); AR 682 (finding that, with her right hand, Plaintiff can frequently perform reaching overhead and forward, handing, fingering, and feeling, and with her left hand, occasionally perform handing, fingering, and feeling). The ALJ reasonably analyzed Plaintiff's testimony in light of the medical evidence and offered specific reasons for his findings that some exertional limitations are warranted based on her testimony and the medical evidence. The ALJ did not arbitrarily discredit or inexplicably reject Plaintiff's testimony. *Orteza*, 50 F.3d at 750; ECF 10 at 19. Rather, the ALJ reviewed her testimony in light of the medical evidence, and based on substantial evidence determined the extent of her limitations. The ALJ's interpretation of the evidence is a rational one, and this Court will not substitute its, or Plaintiff's, judgment for the ALJ's. *See Batson*, 359 F.3d at 1193, 1196.

### d.  Other Limitations

The ALJ reasonably considered Plaintiff's remaining symptoms of "status post tumor in neck with dysphagia," GERD, and additional "limiting physical restrictions," and this Court finds no error. AR 26–27.

As to Plaintiff's GERD, Plaintiff reported in 2016 that she was not experiencing any symptoms and later, in 2018, that over-the-counter medication effectively manages her symptoms. *See, e.g.*,  AR 512 (stating in December 2015 that she was not experiencing heartburn and that the condition improved with probiotics), 1191–92 (recommending in December 2017 that Plaintiff take omeprazole "when necessary which works well for her"); s*ee also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (noting that a favorable response to conservative treatment undermines claims that the pain is disabling).

Regarding Plaintiff's status post tumor with dysphagia, the ALJ reviewed the medical records, which demonstrate that a tumor was removed from her neck in 2015 without complications. *See* AR  372–73. The records also show that Plaintiff continued to suffer from dysphagia. *See* AR 483 (noting "vague dysphagia" diagnosis in July 2015), 490 (diagnosing "mild-moderate oropharyngeal dysphagia" in September 2015), 512 (noting symptoms persisted into December 2015). Despite the tumor removal and remaining dysphagia, the ALJ assessed the medical records as indicating that Plaintiff was able to communicate effectively and that her speech was audible, understandable, and sustainable. AR 26 (citing AR 649, 685–86). The ALJ reasonably evaluated Plaintiff's symptoms related to the tumor removal based on substantial evidence in the record.

Finally, regarding the other "physical restrictions," the ALJ found that these are "at best only slightly limiting," and do not require limitations beyond those included in the residual functional capacity. AR 27. This Court finds no error in the ALJ's analysis as to Plaintiff's other asserted physical limitations. *See generally* ECF 10 at 19 (arguing ALJ "overlook[ed] several of [Plaintiff's] severe impairments and limitations").

Plaintiff testified that she suffers from a number of physical ailments, including "pain in [her] shoulder," "tennis elbow," "pain all around [her] chest and up to [her] back and [her] neck," "weak[ness] in [her] arms and knees." AR 45–46; *see also* AR 279 (listing similar conditions in function report); ECF 10 at 15 (alleging severe impairments of "knee impairments, left elbow impairment, degenerative disc disease . . ., and broken ribs"). The ALJ reasonably determined these issues are only "slightly limiting" given Plaintiff's medical records showing "inconsistent and intermittent treatment," AR 27, and that Plaintiff's subjective complaints about "joint and muscle pain, weakness [and] ambulation problems" are not supported by "objective evidence found in the medical file as well as [her] own statements," AR 23. As to her knee, the ALJ cited medical records demonstrating some reported pain, but no more than mild impairments. *See* AR 1220–25 (determining, in February 2017, that Plaintiff had "[f]ull range of motion of right knee" and "[n]ormal right leg [with] [n]o evidence of injuries"); AR 1226–28 (treating left knee in August 2016, finding "unremarkable" examination with no fracture but some "mild pre patellar effusion and a small calcification," and prescribing a topical pain killer and "knee immobilizer"). As to Plaintiff's testimony regarding cervical spine and left elbow pain, the medical records show that Plaintiff was diagnosed prior to the alleged onset date, *see* AR 581, 641, and Plaintiff provides no citation to more recent treatment or examinations for these issues. Finally, Plaintiff presented to the emergency room in February 2017 following an assault; she reported right flank pain and an x-ray noted fractured ribs. AR 718, 721. Plaintiff was released for "symptomatic treatment at home," and there was "no evidence for emergent condition." AR 719; *see also* AR 694 (diagnosing of rib fracture during emergency room visit for knee pain from fall).

Plaintiff's activity level similarly warrants discounting her testimony as to the effect of these symptoms. Dr. Nguyen's found Plaintiff able to ambulate without a cane, transfer from the chair to examination table, and walk to the examination room without difficulty. AR 677–89. She assessed that Plaintiff could walk or stand for up to six hours and sit for up to six hours. AR 689. Similarly, in her hearing, Plaintiff testified that a typical day involves "go[ing] for a walk about a half mile or so," and that hobbies including walking and stretching, and though that she had problems with heavy lifting, "[o]ther than that" she did not have too much trouble. AR 49, 51. These sorts of daily activities are "incompatible with the severity of symptoms alleged," warranting an "adverse credibility determination." *Ghanim*, 763 F.3d at 1165.

**B. The ALJ Did Not Commit Harmful Error in Evaluating Testimony of Shirley N.**

**1. Legal Standards**

Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony, the ALJ must provide "reasons germane to each witness." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony is harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

### 2. Analysis

The ALJ considered the third-party function report submitted by Plaintiff's mother, Shirley N. AR 29. Plaintiff's mother reported that Plaintiff had problems walking, kneeling, and hearing, and a "recent knee injury which ag[g]ravated an existing condition." AR 314. She also reported mental health issues such as depression, not handling stress well, and having low self-esteem. AR 315–16.

The ALJ found her statement "of limited value." AR 29. Though Shirley N.'s "statement is generally consistent with [Plaintiff's] allegations," the allegations "do not describe symptoms or limitations so severe as to preclude [Plaintiff] from working at jobs consistent with the [RFC]," and the function report included "no specific functional limitations." *Id*. As outlined above, the ALJ reasonably determined that Plaintiff's own subjective testimony, which mirrors that of her mother, warranted discounting. The ALJ specifically found that medical records and Plaintiff's own testimony demonstrated that Plaintiff was able to ambulate without a cane, and that her hearing condition improved with use of a hearing aid. *See* AR 25–28; *see Lewis*, 236 F.3d at 512 (explaining that when rejecting lay witness testimony, the ALJ need give only arguably germane reasons and need not clearly link his determination to those reasons). Thus, the ALJ provided a germane reason for discounting Shirley N.'s testimony.

Moreover, any error in discounting the lay witness testimony is harmless because Shirley N.'s testimony failed to add any information regarding Plaintiff's alleged pain and limitations beyond what was described by Plaintiff and validly discounted by the ALJ. *See Molina*, 674 F.3d at 1122 (finding any error harmless where lay testimony does "not describe any limitations beyond those [described by a claimant], which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons"). In other words, fully crediting Shirley N.'s testimony would not affect the decision because the statements do not include any additional

functional limitations not already considered by the ALJ. *See Deana M. v. Berryhill*, No. 3:17-cv-1068-SI, 2018 WL 3745821, at *9 (D. Or. Aug. 7, 2018).

## C. The ALJ Did Not Commit Harmful Error in Evaluating Medical Opinion Testimony

### 1. Legal Standards

An ALJ must consider, evaluate, and explain the weight given to the opinions of medical professionals and others who saw the Plaintiff or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d)–(e); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).[7]

The Ninth Circuit distinguishes between three types of medical opinions: those from treating sources, those from examining sources, and those from non-examining sources. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). A treating or examining physician's report that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating or examining physician's opinion is contradicted by the opinion of another physician, the ALJ must provide only "specific, legitimate reasons" for discrediting the treating physician's opinion. *Id.*; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can comply with this mandate by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his or her interpretation thereof, and making findings. *Tommasetti*, 533 F.3d at 1041. Specific, legitimate reasons for rejecting a physician's

---

[7] Newly promulgated regulations changed how an ALJ must weigh medical opinion evidence for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (January 18, 2017). Because Plaintiff's claim was filed on June 2, 2016, the new regulations do not apply to her case.

opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040–41.

### 2. Analysis

Plaintiff contends that the ALJ improperly rejected the opinions of: (1) Dr. Khanh Nguyen, M.D.; (2) Dr. Andrew Pedersen, M.D.; (3) Drs. Jeffrey Merrill, M.D., and Neal E. Berner, M.D.; and (4) Drs. Clare McGinness, Ph.D., and Winifred Ju, Ph.D. This Court considers each in turn.

### a. Dr. Khanh Nguyen, M.D.

Plaintiff challenges the ALJ's decision to afford partial weight to the opinion of Dr. Nguyen, who completed a physical evaluation of Plaintiff on November 7, 2016. ECF 10 at 8; *see also* AR 27–28.

Dr. Nguyen performed a consultative examination on Plaintiff. AR 677. She assessed that Plaintiff has "residual difficulties with dysphagia to solids and chronic neck pain," resulting from the removal of a benign mass on her neck, "severe bilateral hearing loss," and "a history of traumatic left fourth finger fracture," which limits her ability to do heavy chores or heavy lifting. AR 681–82. Dr. Nguyen opined that Plaintiff could stand or walk for up to six hours per day, as well as sit for up to six hours per day; lift, carry, push, or pull up to twenty pounds occasionally and ten pounds frequently; climb steps or stairs, ladders, scaffolds, or ropes frequently, as well as frequently stoop, crouch, kneel, or crawl. AR 682. She also opined that due to Plaintiff's "severe hearing loss," a limitation should be put in place for working around excessive noise. *Id.* The ALJ credited these opinions, explaining that "Dr. Nguyen's assessments of [Plaintiff's] exertional and postural limitations and the restrictions related to working around excessive noise are supported by the treatment record." AR 28.

Dr. Nguyen further opined that a cane is "medically necessary based on my objective findings of her poor balance and wide stance gait," and necessary for "long distances and uneven terrain." AR 682. And that while Plaintiff could, with her right hand, "frequently" reach overhead and forward, handle, finger, and feel, Plaintiff could only "occasionally" handle, finger, and feel with her left hand due to injuries to that hand. *Id*. The ALJ did not credit these manipulative restrictions, explaining that Plaintiff's stated activities of daily living and her testimony at her hearing were inconsistent with Dr. Nguyen's manipulative restrictions and statement regarding her need to use a cane to ambulate. AR 27.

For instance, as the ALJ indicated, Dr. Nguyen reported that Plaintiff was "able to walk to the examination room without difficulty" and "able to ambulate," despite not using a cane. AR 679–80. Similarly, during her hearing, Plaintiff testified that she never used a cane, but goes "up and down the stairs" and on a typical day "walk[s] about a half mile or so." AR 48–50. Both Plaintiff and her mother reported that Plaintiff is able to do chores such as laundry, dishes, and cleaning, AR 281, 311, and does not have issues with personal care or hygiene, AR 282, 310. *See also* AR 678 (noting that Plaintiff is able to independently cook, clean, and go shopping). As to Dr. Nguyen's opinion regarding Plaintiff's manipulative restrictions, the ALJ cited the doctor's own notes in which she states that Plaintiff is "able to grip and hold objects securely to the palm by the last three digits" and "able to grasp and manipulate both large and small objects with the first three digits." AR 681. The ALJ additionally cited other medical records which demonstrate that despite an injury to Plaintiff's left ring finger, she retained range of motion and suffered "[n]o rotational deformity." AR 535.

The ALJ did not err by discounting these portions of Dr. Nguyen's medical opinion. The ALJ determined, based on substantial evidence and for specific and legitimate reasons, that Dr.

Nguyen's opinions as to Plaintiff's manipulative limitations and need for a cane are inconsistent with Plaintiff's activity level, with the doctor's own notes, and with other treatment records. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."); *id*. at 1154 ("A conflict between a treating physician's medical opinion and his own notes is a 'clear and convincing reason for not relying on the doctor's opinion,' and therefore is also a specific and legitimate reason for rejecting it." (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005))).

### b.  Dr. Andrew Pedersen, M.D.

Plaintiff challenges the ALJ's assessed RFC in light of Dr. Pedersen's opinion regarding Plaintiff's hearing. ECF 10 at 12.

Dr. Pedersen performed an audiological examination on Plaintiff on January 10, 2017. AR 685. Dr. Pedersen assessed Plaintiff with "left profound sensorineural hearing loss and right moderate mixed hearing loss," such that "[s]he has no serviceable hearing on the left side." *Id*. He noted that Plaintiff stated that she "does adequate with a hearing aid" and is "able to communicate effectively," but that Plaintiff "will have trouble in background noise." *Id*.; *see also* AR 686 (audiologist's examination notes).

The ALJ gave Dr. Pedersen's opinion "great weight," based on its consistency with the examination notes by the audiologist, *see* AR 686, Dr. Nguyen's findings, *see* AR 679, and Plaintiff's statements, *see* AR 281. AR 28. Plaintiff does not appear to contend that the ALJ's reasoning was improper.[8] Rather, Plaintiff argues that the RFC does not adequately reflect Dr.

---

[8] An ALJ need not give reasons for adopting a medical opinion. *See Willard v. Colvin*, No. CV 14-9342-KES, 2016 WL 237068, at *3 (C.D. Cal. Jan. 20, 2016); *Embrey v. Bowen*, 849 F.2d 418, 422 n.3 (9th Cir. 1988).

Pedersen's opinion, which the ALJ credited, therefore implying that the ALJ rejected certain portions of Dr. Pedersen's opinion without providing reasons for doing so. ECF 10 at 12. Specifically, Plaintiff argues that the RFC does not account for Plaintiff's difficulty with background noise. *Id*.

The RFC, in relevant part, provides that Plaintiff "would need to work in a moderate or quieter noise environment that supports that ability to communicate in close contact between the worker and people that she communicates with." AR 23. "There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." *McIntosh v. Colvin*, No. 16-CV-0963-JAH-BGS, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018) (citing *Rounds v. Comm'r, Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). The ALJ was not required to restate verbatim Dr. Pedersen's limitations into the RFC; rather the ALJ reasonably translated the limitation with background noise and "adequately incorporated" it into the RFC which requires a "moderate or quieter noise environment" and be able to "communicate in close contact." *See Rounds*, 807 F.3d at 1006; AR 23. Moreover, the ALJ explained that while the record reflects Plaintiff's hearing limitations, "examination notes and audiological testing . . . show these limitations are not in excess of those already included in the residual functional capacity." AR 25; *see also* AR 26 (explaining the RFC "takes the claimant's [hearing loss] into consideration with the environmental limitations as well as the restrictions to close-contact communication and need to work in a moderate or quieter noise environment"). The ALJ did not erroneously ignore a portion of Dr. Pedersen's assessment in formulating the RFC.

### c.  Drs. Jeffrey Merrill, M.D., and Neal E. Berner, M.D.

Plaintiff objects to the ALJ giving "little weight" to the opinions of Drs. Merrill and Berner, state agency reviewing physicians. ECF 10 at 13.

On January 30, 2017, Dr. Merrill evaluated Plaintiff's file and assessed that Plaintiff has both speaking and hearing communicative limitations, such that she "would need to work in a less than moderate, quiet noise environment." AR 99–100 (internal quotation marks omitted). Additionally, he opined that she should never climb ladders, ropes, or scaffolds, AR 99, and that she should "[a]void even moderate exposure" to hazards such as machinery and heights, AR 100. On April 26, 2017, Dr. Berner made the same assessment. AR 121–22. Neither doctor examined Plaintiff.

The ALJ accorded these opinions "little weight" because neither doctor "had access to the entire file at the time of their assessments, and the records, particularly the assessment of Dr. Nguyen and the treatment notes pertaining to her finger injury, contain clear evidence showing some level of exertional limitations are warranted, in addition to further postural limitations." AR 28. Again, Plaintiff does not appear to object to the ALJ's reasoning as to the exertional and postural limitations, but rather asserts that the ALJ erred by failing to provide reasons for discounting, or "ignoring," the doctors' opinion regarding a quiet noise environment. *See* ECF 12 at 5–6; ECF 10 at 13; *see also* AR 23 (providing for a "moderate or quieter noise environment" in the RFC); *Tyler v. Colvin*, No. 3:15-cv-01879-SI, 2016 WL 4059656, at *5 (D. Or. July 28, 2016) ("An ALJ effectively rejects an opinion when he or she ignores it."). Defendant responds that "the ALJ explained that the opinion was not entirely consistent with the record evidence," and that by "reasonably rejecting the opinions, the ALJ was not required to include the limitations in the RFC." ECF 11 at 13.

An ALJ may discount a medical opinion where it conflicts with the record as a whole. *See Ford*, 950 F.3d at 1154–55; *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."). "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

As noted above, Drs. Merrill and Berner opined that Plaintiff would need to work in a "*less than moderate*, quiet noise environment." AR 100 (emphasis added). The ALJ did not, however, incorporate this limitation in its entirety into the RFC, which limited Plaintiff only to a "*moderate* or quieter noise environment." AR 23 (emphasis added). Here, the ALJ cites to the record, and references specific evidence in the medical record which is inconsistent with Drs. Merrill and Berner's assessment. Specifically, the ALJ cites to Dr. Nguyen's report in which she assesses a limitation for "working around *excessive noise*" due to Plaintiff's hearing loss, but does not assess Plaintiff as needing a quite noise environment. AR 682 (emphasis added). The ALJ credited this portion of Dr. Nguyen's assessment because it is "supported by the treatment record," AR 27, and the medical opinions of Dr. Nguyen, an examining physician, are entitled to more weight than those of non-examining physicians, *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). The ALJ reference to Dr. Nguyen's contrary finding is a specific and legitimate reason for discounting the opinion of Drs. Merrill and Berner, and it is supported by substantial evidence set out in the ALJ's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." (internal quotation marks and citation omitted)). This Court will

not substitute its, or Plaintiff's, judgment for the ALJ's, and accordingly finds no reversible

error. *See Batson*, 359 F.3d at 1193, 1196.[9]

### d.  Drs. Clare McGinness, Ph.D., and Winifred Ju, Ph.D.

Plaintiff contends that the ALJ improperly rejected the opinions of Drs. McGinness and

Winifred, state agency reviewing psychologists. ECF 10 at 13–15.

Dr. McGinness evaluated Plaintiff's file on January 27, 2017. AR 97, 102. She assessed

depressive, bipolar, or related disorders; anxiety and obsessive-compulsive disorders; and

personality and impulse-control disorders, which had moderate impacts on Plaintiff's ability to

interact with others, and to concentrate, persist, or manage pace. AR 97. She further assessed that

Plaintiff is limited to "simple, routine work," due to a moderate limitation in understanding,

remembering, and carrying out detailed instructions. AR 101–02. She also opined that Plaintiff

"can have occasional contact with supervisors and superficial contact with coworkers, and no

public contact," based on a marked limitation in her ability to interact with the general public and

moderate limitation in her ability to accept instructions and criticism from supervisors and to get

along with coworkers. AR 102. Dr. Ju provided the same assessment on May 1, 2017. AR 117–

18, 122–24.

---

[9] Though an ALJ need only provide "one specific, legitimate reason" for rejecting a
medical source opinion, this Court also notes that the ALJ found that neither Dr. Merrill nor Dr.
Berner had access to Plaintiff's entire file. *Djuana, J. v. Berryhill*, No. 3:17-cv-1842-SI, 2019
WL 281288, at *5 (D. Or. Jan. 22, 2019). "The extent to which a medical source is 'familiar with
the other information in [the claimant's] case record' is relevant in assessing that source's
medical opinion." *Rebecca P. v. Saul*, No. 4:19-cv-5206-EFS, 2020 WL 4730979, at *9 (E.D.
Wash. June 10, 2020) (quoting 20 C.F.R. § 404.1527(c)(6)).

The ALJ gave their opinion "little weight" because neither had access to Plaintiff's entire file or hearing testimony, "which indicate that the doctors overestimated her limitations about interacting with the public." AR 28. The ALJ referenced and cited to evidence in the record that demonstrates inconsistencies between the psychologists' assessment and the medical records, Plaintiff's testimony, and her activities of daily living. *Tommasetti*, 533 F.3d 1040–41. For instance, at her hearing, Plaintiff testified that she "[g]enerally . . . got[ ] along well with" her coworkers, and referred positively to her experience interacting with others while working as a bartender and server. AR 56. Similarly, Plaintiff's mother answered "good" in response to how well Plaintiff can follow written and spoken instructions, and noted that she gets along "very well" with authority figures. AR 314. The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record," and the ALJ referenced various medical records demonstrating Plaintiff's "stable" and "normal" mental state. *Sousa*, 143 F.3d at 1244; *see* AR 535 (noting "normal mood and affect" during emergency room visit); AR 679 (noting Plaintiff "is emotionally stable" during examination); AR 718 (noting "[n]o anxiety" or other psychiatric symptoms during emergency room visit). An ALJ may properly discount an opinion that conflicts with the overall record, and the limited weight given to the opinion of Drs. McGinness and Ju is properly supported by the conflicts between their assessment and the other record evidence. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Ford*, 950 F.3d at 1154–56. Accordingly, this Court finds that the ALJ's assessment of their opinion is supported by substantial evidence and free of harmful error. Moreover, this Court notes that while Plaintiff may disagree with the analysis, the findings were reasonable, and this Court must uphold the ALJ's reasonable conclusion "[w]here evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 679; *see also Batson*, 359 F.3d at 1193, 1196.

**D.  The ALJ Did Not Commit Harmful Error at Step Two**

### 1.  Legal Standards

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 U.S. at 153–54. The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. §§ 404.1512; 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart,* 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted) (quoting *Smolen*, 80 F.3d at 1290.)[10]  The ALJ is required to consider the combined effect of all of the claimant's impairments on his or her ability to function. *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003). If the ALJ determines that a claimant is severely impaired at step two, the ALJ continues with the sequential analysis, considering all of the claimant's limitations, whether or not they are severe. SSR 96–9p, 1996 WL 374184 (July 2, 1996). Step two is "merely a threshold determination of whether the claimant is able to perform his past work." *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007). If an ALJ fails to consider limitations imposed by an impairment at step two but considers them at a later step in the sequential analysis, any error at step two is harmless. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir.2007); *Burch,* 400 F.3d at 682; *Harrison v. Astrue,* No. 10-6120-MO, 2011 WL 2619504, *7 (D. Or. July 1, 2011)

---

[10] *See also* 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."); *id.* § 416.921(b) (defining basic work activities as "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "seeing, hearing, and speaking," "[u]nderstanding, carrying out, and remembering" instructions," using judgment and appropriately responding, and dealing with changes at work).

("Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two.").

### 2. Analysis

At step two of the sequential analysis, the ALJ found that Plaintiff has the following severe impairments: affective disorder, anxiety disorder, personality disorder, GERD, status post tumor in neck with dysphagia, bilateral sensorineural hearing loss with no functional hearing in left ear, and status post fracture of fourth finger of the left hand. AR 19. Plaintiff argues that the ALJ erred at this step by improperly rejecting as severe her knee impairments, left elbow impairment, degenerative disc disease of the cervical spine, and broken ribs. ECF 10 at 15–16. Defendant contends that the ALJ properly evaluated Plaintiff's severe impairments, and that even if the ALJ erred in his analysis, any error is harmless. ECF 11 at 16–18.

### a. Knee Impairments

The ALJ considered Plaintiff's knee impairments ("right knee injury" and "left knee pain") and determined that neither is severe. AR 19–20. The ALJ reviewed Plaintiff's medical records from emergency room visits in March 2016 and February 2017. AR 19–20; *see* AR 1220–28. The records demonstrate that while Plaintiff reported knee pain, she had "[f]ull range of motion of right knee," AR 1221, she reported that she could "walk fine," AR 581, and that the examination was "unremarkable," AR 1228. Dr. Nguyen's examination resulted in consistent findings: Plaintiff was able to ambulate without a cane, transfer from the chair to examination table, and walk to the examination room without difficulty. AR 677–89. Though Dr. Nguyen diagnosed bilateral knee pain, she assessed that Plaintiff could walk or stand for up to six hours, and sit for up to six hours. AR 689. On this record, this Court cannot say the ALJ erred in his conclusion that Plaintiff's knee impairments do not cause more than a minimal limitation in her ability to perform basic work. AR 19–20.

### b.  Elbow, Spine, and Rib Impairments

In addition to knee impairments, Plaintiff argues that the ALJ improperly rejected as severe impairments left elbow pain, degenerative disc disease of the cervical spine, and broken ribs. ECF 10 at 15–16. Defendant cites to various parts of Plaintiff's medical record indicating that these impairments did not reach the level of severity necessary to cause more than a minimal limitation in Plaintiff's ability to perform basic work. ECF 11 at 16–17. The ALJ, though, did not discuss these impairments in his step two analysis. *See* AR 19 (considering as nonsevere "stage 1A breast cancer, right knee injury, left knee pain, and left arm lymphedema").  Because this Court may not affirm on a ground upon which the ALJ did not rely, this Court cannot say the ALJ did not err. *Orn*, 495 F.3d at 630. However, any error is harmless. First, Plaintiff points to diagnoses contained in the medical record, but does not tie these diagnoses to any functional limitations that the ALJ failed to consider in his sequential analysis. *See Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019). "A diagnosis alone does not establish the severity of an impairment." *Id*. (citing *Key v. Heckler*, 754 F.2d 1545, 1549–50 (9th Cir. 1985)). Second, the ALJ assessed certain severe limitations at step two. When he proceeded with the sequential analysis, the ALJ considered the impact of all of Plaintiff's alleged conditions, both severe and not, in evaluating her RFC, rendering the omission at step two harmless. *See* AR 27–28 (considering mobility-related limitations); *see also Lewis,* 498 F.3d at 911; *Burch*, 400 F.3d at 682.

### E.  The ALJ Did Not Commit Harmful Error at Step Three

#### 1.  Legal Standards

At step three, the ALJ is tasked with determining if one or more of a claimant's severe impairments "meets or equals" one of the presumptively disabling impairments listed in the SSA regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If you have an impairment

which meets the duration requirement and is listed in [20 C.F.R. Part. 404, Subpart P,] [A]ppendix 1 or is equal to a listed impairment, the SSA will find you disabled without considering your age, education, and work experience." 20 C.F.R. §§ 404.1520(d), 416.920(d). "[F]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

### 2. Analysis

Plaintiff contends that the ALJ erred by failing to conduct an adequate analysis at step two, specifically by failing to properly consider Listing 1.04 and 1.02A. ECF 10 at 16.[11] Plaintiff goes on to argue that she:

> [M]eets or equals Listing 1.02A due to the inability to walk a block at a reasonable pace on rough or uneven surfaces, as she has been prescribed a cane . . ., patellofemoral syndrome of both knees, right medial degenerative joint disease and prepatellar effusion with a small calcification, with ER visits, weakness, and pain, aggravated by standing up or using stairs.

*Id*. at 16–17. The ALJ did not expressly consider whether or not Plaintiff meets or equals Listing 1.02A. *See* AR 20–23.

Listing 1.02A applies to major dysfunction of a joint and is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: Involvement of one major peripheral weight-bearing joint (*i.e.*, hip,

---

[11] Plaintiff provides no argument as to why she falls under Listing 1.04. Accordingly, this Court assesses only her argument as to Listing 1.02A. *See Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

> knee, or ankle), resulting in inability to ambulate effectively, as
> defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P., app. 1, § 1.02A. The regulations define ambulating effectively as being able to "sustain[ ] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id*. § 1.00B2b. Examples of ineffective ambulation include: "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id*.

As a matter of law, an ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). When the ALJ's "evaluation of the evidence" adequately provides the "foundations on which the ultimate factual conclusions are based," there is no reversible error. *Id*.; *see also James A. v. Comm'r of Soc. Sec.*, No. C19-5879-BAT, 2020 WL 1485936, at *1 (W.D. Wash. Mar. 27, 2020) (explaining the ALJ must still make reviewable findings). In this case, the ALJ "discussed and evaluated evidence supporting his conclusion," *Lewis*, 236 F.3d at 513, that Listing 1.02A is inapplicable in a different section of his decision, rendering his findings reviewable and without reversible error. *See, e.g.*, AR 19–20 (finding left and right knee impairments cause no more than minimal limitations), 24 (noting Plaintiff reports going for "half-mile walks," "does not use a cane to ambulate," and "use[s] public transportation"). On this record, this Court cannot say the ALJ has erred in not explicitly considering Listing 1.02A. *See Lewis*, 236 F.3d at 513; *Hamilton v. Astrue*, No. EDCV 08-1843-MAN, 2010 WL 3748744, at *7 (C.D. Cal. Sept. 22, 2010).

**F.  The ALJ Did Not Commit Harmful Error at Step Five**

    **1.  Legal Standards**

    "If a claimant does not have the residual functional capacity to perform past relevant work, then it is the Commissioner's burden at step five to establish that the claimant can perform other work." *Lewis*, 236 F.3d at 517. An ALJ may use a vocational expert "to determine whether a claimant can use his or her work skills in other work." *Id*. When the ALJ uses a vocational expert, the "[h]ypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments,'" such that if the record fails to support the assumptions in the hypotheticals, "the vocational expert's opinion has no evidentiary value." *Id*. (quoting *Gamer v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

    **2.  Analysis**

    On the record before this Court, this Court finds no error at step five. As explained above, this Court finds the ALJ did not err in formulating the RFC, and the hypothetical posed to the ALJ contained those limitations outlined in the RFC. *See* AR 58. Moreover, the ALJ found, based on the testimony of the vocational expert and considering Plaintiff's RFC, age, education, and work experience, that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," and thus, that prior to August 30, 2017, she was not disabled. AR 30–31.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled prior to August 30, 2017 is

AFFIRMED.


**IT IS SO ORDERED**.

DATED this 20th day of January, 2022.

/s/ Karin J. Immergut

Karin J. Immergut
United States District Judge